907 So.2d 159 (2005)
Donald WINFREY
v.
LOUISIANA CARNIVAL CLUB, INC., Adrian Baudy, and Tig Insurance Company.
No. 2004-CA-1913.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 2005.
Rehearing Denied July 15, 2005.
Jerry W. Sullivan, Leefe, Gibbs, Sullivan, Dupre' & Aldous, Metairie, LA, for Appellees, Third-Party Plaintiffs/Appellees, Louisiana Carnival Club, Inc., Adrian Baudy, and TIG Insurance Company.
*160 Andre' C. Gaudin, Meredith M. Miceli, Burglass & Tankersley, L.L.C., Metairie, LA, for Third Party Defendant/Appellant, Clarendon National Insurance Company.
(Court composed of Judge DENNIS R. BAGNERIS, SR., Judge MICHAEL E. KIRBY, Judge LEON A. CANNIZZARO, JR.).
Judge LEON A. CANNIZZARO, JR.
This appeal involves a claim by a third party plaintiff against a third party defendant. The trial court held that TIG Insurance Company and Clarendon Insurance Company were co-primary insurers in connection with an accident that was the subject of the main demand. TIG Insurance was an original defendant and a third party plaintiff in this case, and Clarendon was a third party defendant. Clarendon is appealing the judgment insofar as it holds that Clarendon is a co-primary insurer.

FACTS AND PROCEDURAL HISTORY
The plaintiff in the main demand in this case, Donald Winfrey, was hired to ride atop a float in a political campaign parade. Mr. Winfrey was hired to monitor wires, tree branches, and other obstructions that might be encountered by the float on the parade route. Mr. Winfrey and the driver of the tractor pulling the float, Adrian Baudy, were given two-way radios with which to communicate with one another regarding any obstructions encountered during the parade. After the parade turned onto Chef Menteur Highway in New Orleans from a neighborhood street, it traveled under a set of eastbound and westbound overpass bridges on U.S. Interstate Highway I-10. Mr. Winfrey knelt down on his hands and knees before the float went under the first overpass bridge, but when he saw daylight again, he raised up and hit his head on the second overpass bridge. Mr. Winfrey lost consciousness after he hit his head. The parade was stopped, Mr. Winfrey was helped from the float when he regained consciousness, and he was taken to the hospital. At the hospital he was treated for head trauma. He suffered a concussion and a fracture involving his right frontal sinus[1]. Mr. Winfrey also alleged that he suffered, among other things, permanent brain damage from the accident.
The parade during which Mr. Winfrey was injured was a parade for Herbert Cade's[2] campaign for a seat in the state senate. Mr. Winfrey was hired to paint the float on which he rode prior to the parade and to ride atop the float on the day of the parade. Mr. Winfrey was asked to work on the parade by the owner of the float, Mr. Reginald Walker, who was Mr. Cade's friend.
Ida Mulmore, the wife of Mr. Baudy, the tractor driver, owned the tractor that pulled the float. Ms. Mulmore had permanently leased the tractor to Cargo Express, Inc., a trucking company owned by Edward Wiltz, who was also Mr. Cade's friend. The tractor had been either loaned or rented to Mr. Cade by Cargo Express for use in the parade. Mr. Baudy was a regular Cargo Express employee, but he considered himself an employee of Louisiana Carnival Club, Inc. while he was driving the tractor in the parade for Mr. Cade.
Louisiana Carnival Club was a nonprofit organization formed for the purpose of *161 enabling parading organizations to obtain insurance for their parades. Louisiana Carnival Club obtained a liability insurance policy that could be endorsed to add named parading organizations as insureds upon the organizations' payment of the required premiums. Louisiana Carnival Club and its "member clubs" were the named insureds on the insurance policy that was issued by TIG Insurance.
Suit in this case was originally filed by Mr. Winfrey against Louisiana Carnival Club, Mr. Baudy, and TIG Insurance. Approximately three years later, the three defendants filed a third party petition against Clarendon National Insurance Company[3] alleging that Clarendon was the insurer for Cargo Express and for Mr. Baudy, as an employee of Cargo Express. TIG Insurance claimed that Clarendon was a primary insurer in this case that should share equally in any insurance obligations owed to Mr. Winfrey on behalf of the insured parties.
After the third party petition was filed, Clarendon filed a motion for summary judgment based on the following assertions: (1) that TIG Insurance provided the liability insurance coverage for the Louisiana Carnival Club for the mobile equipment used in the parade, including the float that Mr. Winfrey rode and the tractor that pulled the float; (2) that Mr. Baudy was not acting as a Cargo Express employee when he drove the tractor in the parade and was, therefore, not insured by Clarendon; and (3) that even if the Clarendon policy covered the tractor driven by Mr. Baudy, Clarendon provided excess coverage only when an insured vehicle was loaned to another party by Cargo Express. Clarendon's motion for summary judgment was denied.
This matter was tried in a bench trial before a trial court judge for two days. It was also tried for an additional two days before an ad hoc judge who rendered the judgment in this case. During the trial, Clarendon filed a second motion for summary judgment or declaratory judgment on the grounds that the trial testimony from Mr. Wiltz established that the tractor driven by Mr. Baudy was not owned by Cargo Express but was instead owned by Mr. Baudy's wife, who leased the tractor to Cargo Express. Clarendon argued that under those circumstances, its policy afforded only excess coverage with respect to the tractor. At the conclusion of the trial, the trial court declared the motion for summary judgment or declaratory judgment to be moot.
The trial court rendered judgment finding fault in the following proportions:

 Mr. Baudy 75%
 Mr. Winfrey 15%
 Mr. Walker 5%
 Mr. Wiltz 5%

Mr. Winfrey was awarded general damages in the amount of $450, medical expenses of $11,046, and lost wages of $500. The trial court judgment further held that TIG Insurance and Clarendon "are co-primary insurers."
After the trial court judgment was rendered, Clarendon filed a motion for a new trial on the ground that the trial court failed to apply the appropriate clause in the insurance policy, which would make Clarendon's coverage excess over any other coverage. The motion was denied.[4] Clarendon then filed a suspensive appeal, *162 and Mr. Winfrey filed a devolutive appeal, which he is not pursuing. TIG Insurance, the Louisiana Carnival Club, and Mr. Baudy have not filed an appeal. The only matter before this Court now is Clarendon's appeal.

DISCUSSION

Assignments of Error
Clarendon has raised three assignments of error in its appeal. First, Clarendon asserts that the trial court erred in holding Clarendon liable to Mr. Winfrey, because Clarendon had not been sued by Mr. Winfrey. Therefore, Clarendon argues that the trial court's judgment should have addressed the third party plaintiffs' demands against Clarendon and not Clarendon's liability to Mr. Winfrey. Second, Clarendon contends the trial court erred in ruling that Clarendon owed insurance coverage in connection with Mr. Winfrey's injuries, because the third party plaintiffs never placed the Clarendon insurance policy into evidence. Third, Clarendon claims the trial court erred by failing to support its finding of coverage on the part of Clarendon. Because we find merit in the second assignment of error, and our finding of merit is dispositive of this appeal, we need to address only the second assignment of error.

Failure to Place the Clarendon Insurance Policy in Evidence
In Tunstall v. Stierwald, XXXX-XXXX (La.2/26/02), 809 So.2d 916, the Louisiana Supreme Court articulated the applicable burden of proof in a suit on an insurance policy. The Supreme Court stated that "[i]n an action under an insurance contract, the insured bears the burden of proving the existence of the policy and coverage. The insurer, however, bears the burden of showing policy limits or exclusions." 809 So.2d at 921 (citations omitted). In Barber v. Best, 394 So.2d 779 (La.App. 4th Cir.1981), this Court discussed the plaintiff's burden of proof when the plaintiff is suing on an insurance policy. This Court stated:

A plaintiff suing on an insurance contract has the burden of establishing the existence of the policy sued on and its terms and provisions. Plaintiff must plead and prove his claim falls within the general policy, whereas the insurer must prove exclusions from coverage.
379 So.2d at 780-81 (citations omitted and emphasis added).
In the instant case the third party plaintiffs were the Louisiana Carnival Club, Mr. Baudy, and TIG Insurance. Therefore, TIG Insurance[5] was required to provide proof of the existence of the Clarendon insurance policy as well as the terms and provisions of the policy. Only after TIG Insurance proved the policy's existence and its terms and provisions would the burden of proof shift to Clarendon to show that under the terms of its policy, it owed only excess, not primary, coverage under the facts of the instant case.
In the instant case the record contains an insurance policy issued by Clarendon National Insurance Company. It was introduced into evidence at the trial as Plaintiff's Exhibit 2. The Common Policy Declaration in Plaintiff's Exhibit 2 states that the policy period is from July 14, 1999, to July 14, 2000. Mr. Winfrey's accident occurred on February 5, 1999. Therefore, the insurance policy introduced into evidence at the trial was, on its face, not yet in effect on the date of the accident.
*163 At the trial there was a discussion regarding Plaintiff's Exhibit 2. The attorney for TIG Insurance and the third party plaintiffs stated that "[t]he original or certified copy of the Clarendon policy has not been produced today. Mr. Harvey [Mr. Winfrey's attorney] has rested and the wrong policy is in the record as of this time." The attorney for Clarendon subsequently attempted to remedy the problem as shown in the following statement:
[T]he policy that was included as part of the record was not in effect at the date of the loss; however, the defendant is willing to stipulate they had a substantially similar policy in effect on the date of the accident; that is February 5th, 1999; and further that the other insurance clause and clause in the policy provision that we're relying upon ... was the exact same provision in effect in the earlier policy that was issued by Clarendon and was in effect on the date of this accident.
The trial court judge then clarified this statement by asking if Clarendon's counsel were "willing to stipulate that that language is the same as the language on the policy that's in the record." Clarendon's counsel replied, "That's correct."
The trial court judge asked Clarendon's attorney whether she could have an official, certified copy of the policy sent by overnight courier so that the correct policy could be introduced into evidence. She said that she thought that she should have the policy by the end of the week, in response to which the trial court judge said that "after the matter is submitted, then a policy that's in the record is the policy that's in the record...." Mr. Winfrey's attorney then said that "[i]n my case, I've rested. I can only go by the policy that's in the record."
The following exchange then occurred at the trial:
THE COURT:
So you're not  so we can't have a stipulation?
MS. BAIRD [Clarendon's attorney]:
Right, we can't.
MR. SULLIVAN [TIG Insurance's attorney]:
I don't know how I can, Your Honor. That  there's just too great a risk to my client.
THE COURT:
Correct. Okay, well, the policy then is in the record.
Plaintiff's Exhibit 2 is not the policy of insurance upon which Clarendon is being sued. The policy upon which suit was brought is not in the record. TIG Insurance was required under the applicable jurisprudence to prove not only that Mr. Winfrey's injury was covered by a Clarendon policy but also to establish the terms of the policy. When Mr. Sullivan, the attorney for TIG Insurance, refused to stipulate that the terms and conditions in the Clarendon policy in effect at the time of Mr. Winfrey's accident were substantially the same as those in Plaintiff's Exhibit 2, there was nothing in the record to prove that a Clarendon insurance policy existed or the contents of the policy. Therefore, TIG Insurance failed to carry its burden of proof for the third party claim against Clarendon.
Although TIG Insurance failed to prove its claim against Clarendon, Clarendon's attorney stated on the record that "Clarendon's position is that there is coverage for this incident, but they would be excess to TIG." Because Clarendon has admitted that it is responsible for the excess insurance in the instant case, TIG Insurance does not have to prove what was admitted.
We find that the trial court judge erred in her holding that Clarendon and TIG *164 Insurance were co-primary carriers, and we reverse that holding. We further hold that TIG Insurance is the primary insurer in the instant case and that Clarendon is the excess insurer.

CONCLUSION
The trial court judgment is reversed insofar as it holds that TIG Insurance and Clarendon are co-primary insurers. The trial court judgment is amended to state that TIG Insurance is the primary insurer and that Clarendon is the excess insurer.
REVERSED IN PART AND AMENDED.
NOTES
[1] The right frontal sinus is a cavity located in the skull bone over the right eye.
[2] At the time of the accident, Judge Herbert Cade had not yet been elected to the bench. Therefore, we will refer to him as Mr. Cade throughout this opinion.
[3] The third party petition was originally filed against both Clarendon Insurance and Clarendon Insurance Company, but the answer to the third party petition and the other pleadings filed by the third party defendant use the name Clarendon National Insurance Company.
[4] The judgment denying this motion is not in the record that is before us.
[5] Although all of the third party plaintiffs bore the burden of proof, TIG Insurance is the only third party plaintiff involved in this appeal.